Of Counsel
GALIHER DeROBERTIS ONO

GARY O. GALIHER          2008
L. RICHARD DeROBERTIS    3179
(RD@gogaliher.com)
DIANE T. ONO             5590
ILANA K. WAXMAN          8733
SCOTT K. SAIKI           5595
TODD W. EDDINS           5544
MICHAEL A. RAGSDALE      8382
610 Ward Avenue
Honolulu, Hawai`i  96814-3308
Telephone:  (808) 597-1400
Facsimile:  (808) 591-2608
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ROGER E. NELSON and ROSALIE J. NELSON, <br><br> Plaintiffs, <br><br> vs. <br><br> CRANE COMPANY, etc., et al., <br><br> Defendants. | CV 11-00406 LEK/RLP <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT **WARREN PUMPS, LLC'S** MOTION TO STAY PROCEEDINGS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI`I PENDING TRANSFER TO MDL-875; DECLARATION OF COUNSEL; EXHIBITS A – H; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE <br><br> <u>HEARING</u>: <br>   **DATE:**   **Monday, August 29, 2011** <br>   **TIME:**      **9:45 a.m.** <br>   **JUDGE:**   **Hon. Leslie E. Kobayashi** |

## Table of Contents

I.     PREFACE. ...................................................................................1

II.    PROCEDURAL BACKGROUND ...................................................4

III.   SUMMARY. ...............................................................................6

IV.    THE JUDICIAL PANEL IN ASBESTOS MDL-875 EXPRESSLY
       AUTHORIZED LOCAL FEDERAL COURTS TO HEAR REMAND
       MOTIONS ..................................................................................9

       A.    This Court's *Ortiz* Opinion .................................................11

       B.    The Relevant Factors Weigh Against A Stay .......................12

       C.    The *Ortiz* 3-Step Methodology ..........................................13

V.     ALL OF DEFENDANTS' ARGUMENTS LACK MERIT...........................26

VI.    DEFENDANTS ARE MERELY ENGAGING IN DELIBERATE
       DELAY TACTICS. .....................................................................29

VII.   CONCLUSION. ..........................................................................35

## Exhibit List

| A | *In Re Asbestos Product Liability Litigation* (No. VI) 1996 WL 143826 (Jud.Pan.Mult.Lit) |
|---|---|
| B | Roger Nelson medical records (NelsonMeds-0001 to 0017) |
| C | CMO No. 1 *In Re Hawai`I State Asbestos Cases* |
| D | Docket sheet in *Hays* |
| E | June 14, 2002 Transcript of Proceedings in *Chang v. Combustion Engineering* |
| F | *Clement Lee* docket sheet |
| G | *Rellin v. Allied-Signal* docket sheet |
| H | Transcript, January 13, 2011 in *Curry v. American Standards*, (S.D.N.Y.) excerpts |

# Table of Authorities

## Cases

*Baker v. Air & Liquid Systems*, 2011 WL 499963 (S.D.Ill.) ...................................18

*Barrett v. CLA-VAL Co*., Slip Opinion, CV07-7774 PSG (C.D. Cal. 2008) (Gutierrez, J.) ...............................................21

*Bonds v. Various Defendants*, 2011 WL 921647 (E.D. Pa. 2011) .........................27

*Boyle v. United Technologies*, 487 U.S. 500 (1988) .................. 9, 15, 16, 19, 20, 21

*Brewster v. A.W. Chesterton*, 2007 WL 1056774 (N.D.Cal.)..................................31

*Cardaro v. Aerojet Corp.,* 2010 WL 3488207 (E.D. La.) ...................... 1, 25, 27, 28

*Craigg v. Alpha Laval*, 2009 WL 4110389 (S.D. Ill.)............................................23

*Delaventura v. Columbia Acorn Trust*, 417 F.Supp.2d 147 (D.Mass. 2006).........32

*Dorse v. Eagle-Picher Industries*, 898 F.2d 1487 (11th Cir. 1990) ........................14

*Epperson v. Northrop Grumman Systems Corp.,* 2006 U.S. Dist. Lexis 3033 (E.D.VA.)............................................................24

*Glein v. Boeing Co.*, 2011 WL 537987 (S.D.Ill.) ............................................ 18, 25

*Granier v. Northrop Grumman Ship Systems*, 2008 WL 5216213 (E.D. La.) (Fallon, J.) ...............................................25

*Green v. A.W. Chesterton Company*, 366 F. Supp. 2d 149 (D. Me. 2005) .............24

*Hagen v. Benjamin Foster, Co.*, 739 F. Supp 2d 770 (E.D. Pa. 2010)............. 27, 33

*Hampton v. Owens-Illinois,* 2007 WL, 274794 (E.D. La.)...................................25

*Hilbert v. Aeroquip, Inc.,* 486 F. Supp. 2d 135 (D. Mass. 2007) ..................... 24, 29

*Holdren v. Buffalo Pumps*, 614 F.Supp.2d 129, 137 (D.Mass 2009)..... 2, 19, 20, 33

*In Re Asbestos Products Liability Litigation (VI)*, 771 F.Supp. 415, 419 (J.P.M.L. 1991) ...............................................34

*In Re Asbestos Products Liability Litigation* (VI): *Wooly/Baden*, 170 F.Supp.2d 1348 (J.P.M.L. 2001) ...............................................34

*In Re Hawai`i Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992) . 2, 4, 8, 9, 14, 16, 17, 23

*In re Joint E. & S. District of New York Cases*, 897 F.2d 626 (2d Cir. 1990) ........14

*Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)..............7

*Lichtenfels v. Electro-Motive Diesel*, 2010 WL 653859 (W.D.Pa.) .......................31

*Lindenmayer v. Allied Packing & Supply*, 2010 WL 234906 (N.D. Cal.) (Henderson, J.) ...............................................20

*Luce v. A.W. Chesterton*, 2010 WL 2991671 (N.D. Cal. 2010) (Chesney, J.) ........20

*McCormick v. C.E. Thurston & Sons*, 977 F. Supp. 400 (E.D. Va. 1997) .............23

*Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. Lexis 4433 (D. Del.) .............23

*Mesa v. California*, 489 U.S. 121, 132-33 (1989) ....................................... 3, 22, 33

*Miranda v. Abex Corp.,* 2008 WL 4778886 (S.D.N.Y.)........................................25

*Moore v. Asbestos Defendants*, 2010 WL 2650487 (N.D. Cal) (Seeborg, J.).........20

*Mouton v. Flexitallic*, 1999 WL 225438 (E.D. La 1999) (Porteous, J)...................26

*Nguyen v. Allied-Signal*, 1998 WL 690854 (N.D. Cal.)..........................................23

*Ortiz v. Menu Food*, 525 F. Supp. 2d 1220 (D. Hawaii 2007) .............. 6, 11, 17, 18

*Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal.) (Illston, J.)...........23

*People v. Mesa*, 813 F.2d 960, 965 & 967 (9th Cir. 1987)........................................3

*Prewett v. Goulds*, 2009 WL 2959877 (W.D. Wash. 2009) (Martinez, J) .............21

*Rosamond v. Garlock Sealing Technologies*, 2004 WL 1059811 (N.D.Miss.) 30, 31

*Ruhrgas A.G. v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ......................7

*Scarbrough v. General Electric Co.*, Slip Opinion, CV 07-1192-RGK (C.D. Cal. April 13, 2007) (Klausner, J.) .............................................................................21

*Schilz v. A.P. Green Industries, Inc.*, 2002 U.S. Dist. Lexis 1176 (N.D. Cal.) (Chesney, J.)........................................................................................................22

*Sether v. AGCO Corporation*, 2008 WL 1701172 (S.D. Ill.)..................................24

*Snell v. Bell Helicopter.* 107 F.3d 744, 749 (9th Cir. 1997)....................................8

*Snowdon v. A.W. Chesteron*, 366 F. Supp. 2d 159 (D. Me. 2005) ........................24

*Sylvester v. Menu Foods, Inc.*, 2007 WL 4291024 (D. Hawaii) ............................11

*Thomas v. Anchorage Equal Rights Commission*, 165 F.3d 692 (9th Cir. 1999) .....3

*Weese v. Union Carbide Corp.*, 2007 WL 2908014 (S.D. Ill.) ...............................25

*Westmiller v. IMO Industries, Inc.*, 2005 WL 2850334 (W.D. Wash.) (Martinez, J.) ...............................................................................................................................22

*Williams v. General Electric Company*, 418 F. Supp. 2d 610 (M.D. Pa. 2005) .....24

**Statutes**
28 U.S.C. § 1447 (c) ...............................................................................................27

## I.   PREFACE.

Defendants argue that letting the MDL court rule on remand motions is "efficient."  This is not true.  As discussed in Section V below, there are remand motions on this exact issue that have been pending in MDL for over one year. (*Hays* docket sheet, Exhibit D).  At least one case was transferred back for trial with no ruling on a remand motion which had been pending in the MDL for over five years.  *Cardaro v. Aerojet Corp.,* 2010 WL 3488207 (E.D. La.).   As the *Cardaro* court noted in granting remand on the exact jurisdictional issues before this court, disposition of the remand motion was "unfortunately delayed for an inordinate amount of time due at least in part to the procedural quagmire of this case through the MDL court and transfer back to this court."  *Id.* at fn 1. Federal courts disallow the *Boyle* military contract defense when cases are transferred back and tried for verdict.  (See Exhibit H, transcript of 1-13-2011, pp. 577-78, *Curry v. American Standards* (S.D.N.Y.))   It is well-settled sister district courts are not bound by *stare decisis* to follow MDL district court rulings.  *Illinois Municipal Ret. Fund v. CitiGroup*, 391 F.3d 844, 851-2 (7th Cir. 2004).

Defendants also claim that a stay should be granted because the legal and factual issues on Plaintiffs' Remand Motion are difficult, citing as proof Plaintiffs' 38 exhibits to the Remand Motion.  Again, this is not true.  The factual issues are not difficult.  It is undisputed that:

1.      There is not one piece of evidence to show that the Navy ever considered the defect at issue: whether equipment manufacturers should provide an asbestos warnings to end users.

2.      No defendant ever asked permission of the Navy to warn end users about asbestos.   *Holdren v. Buffalo Pumps*, 614 F.Supp.2d 129, 137 (D.Mass 2009).

2.      No defendant ever warned its <u>commercial</u> end-users of the dangers of asbestos. *Id.* at 137.

3.      Asbestos insulation manufacturers actually provided asbestos warnings to sailors and shipyard workers in 1966 without special permission from the Navy, although those warnings were ineffective.   *In Re Hawai`i Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992).

5.      All of the military specifications attached as exhibits to Plaintiffs' Remand Motion prove the Navy consistently <u>allowed</u> commercial safety warnings! (Plaintiffs' Remand Exhibits 5-19 & 21-24).

6.      Defendants routinely provided safety warnings about other toxic products used in their equipment (i.e., solvents, carbon tetrachloride, etc.) (Plaintiffs Remand Exhibits 25-33).

7.    Two removing defendants (Air Liquid/Buffalo and Crane) actually provided asbestos warnings in the mid-1980s, without asking for or receiving Navy approval. (Plaintiffs' Remand Exhibits 34-38).

The legal issues are not difficult if Ninth Circuit law is followed.  Federal officer removal is only available where the  acts for which a defendant is sued have a "causal nexus" to a federal directive and there is a "colorable" federal defense. *People v. Mesa*, 813 F.2d 960, 965 & 967 (9th Cir. 1987), affd, *Mesa v. California*, 489 U.S. 121, 132-33 (1989).  The burden is on the removing defendant to satisfy both elements.

A "colorable" defense means something more than mere allegations.  *Mesa*, 489 U.S. at 133. ("We decline to divorce the federal official immunity defense from the pleadings required to allege it and transform those pleading requirements into an independent basis for jurisdiction.  Mesa and Ebrahim . . . could not present an official immunity defense . . ..").  As the Ninth Circuit made clear in *Thomas v. Anchorage Equal Rights Commission*, 165 F.3d 692 (9th Cir. 1999), a "colorable" claim standard is more exacting than an "allegation-only" standard.  *Id*. at 705 ("a 'colorable claim' standard does not provide the exactitude of an allegation-only standard . . ..").

Here, Defendants are being sued for their failure to warn Navy sailors and shipyard workers about the hazards of asbestos.   They claim to be entitled to the

*Boyle* government contract defense.  This defense was rejected by the Ninth Circuit in asbestos failure-to-warn claims, the only claims alleged against these defendants in Plaintiffs' complaint.  *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992).

If Ninth Circuit law is followed, then this remand motion is uncomplicated and straightforward.  Given that the Navy never prohibited defendants from warning end users about asbestos (and defendants did not warn their commercial customers), there is no causal connection and no evidence to support the *Boyle* government contract defense.

## II.    PROCEDURAL BACKGROUND.

Plaintiffs filed the *Roger Nelson* case in Hawai`i state court on May 17, 2011.  This was assigned to Circuit Judge Rhonda Nishimura as part of the Hawai`i State Court Asbestos Litigation.   Roger Nelson answered various discovery requests, including the summary sheet, the master interrogatories and production of 4,059 pages of documents (including military, medical, tax and personal records, plus Naval Archive records regarding the USS Mansfield).  He was deposed on June 10, 2011 for 7.5 hours.  (Declaration of Counsel ¶5.)

On June 22, 2011, four different defendants (Air & Liquid Systems, fka Buffalo Pumps, Crane Co., IMO Industries, and Warren Pumps) filed four separate removal petitions in Hawai`i Federal Court.   These were given four separate

federal civil action numbers: to wit 1:11-cv-400 (Air Liquid/Buffalo); 1:11-cv-402 (Crane); 1:11-cv-405 (IMO); 1:11-cv-406. (Warren)

All four removal petitions purport to base jurisdiction on federal officer removal (28 U.S.C. §1442), claiming the *Boyle* government contract defense. As noted above, this defense was rejected by the Ninth Circuit in asbestos failure-to-warn claims. Supreme Court and Ninth Circuit law requires the federal government to have exercised discretion on the defective feature at issue for the *Boyle* defense to apply. Here that feature is lack of manufacturer asbestos warnings to end-users. There is no evidence that the Navy ever considered the issue of asbestos warnings by equipment manufacturers; nor is there any evidence that the Navy caused the manufacturers' failure to warn.

On June 30, 2011, Plaintiffs filed four identical Remand Motions. These four remand motions are literally word for word identical. Only one Remand Motion needs to be read.

On June 30, 2011, a Conditional Transfer Order (CTO) was issued in Civil No. 11-cv-400 only. On July 6, 2011, Plaintiffs filed an objection to this CTO. Thereupon, the Judicial Panel set a briefing schedule setting Plaintiffs' Motion to Vacate for July 20, 2011 and Defendant's opposition for April 10, 2011.

On July 7, 2011, a CTO was issued in Civil No. 11-cv-00402. On July 12, 2011, a CTO was issued in Civil No. 11-cv-00405 and 11-cv-00406. Plaintiffs

timely opposed these CTOs as well.  As per the Judicial Panel's prior rulings, this gives local courts the "lag time" in which to rule upon remand motions.

Thus, this court has jurisdiction to rule upon the Remand Motions until the Judicial Panel rules, and this is exactly the method the panel has approved for remand motions in MDL-875.

## III.    SUMMARY.

Defendant asks this Court to stay all proceedings and to not hear Plaintiffs' remand motion.

Defendant's motion to stay is not well-founded and indeed is directly contrary to the Judicial Panel on Multidistrict Litigation in the asbestos MDL proceedings.  *In Re Asbestos Product Liability Litigation* (No. VI) 1996 WL 143826 (Jud.Pan.Mult.Lit) at fn. 2 (Exhibit A hereto).  Specifically, this motion to stay should be denied because:

1.     It is contrary to this Court's rulings in *Ortiz v. Menu Food*, 525 F. Supp. 2d 1220 (D. Hawaii 2007).

2.     The Judicial Panel in Asbestos MDL-875 has stated that local federal courts that wish to address jurisdictional issues in remand motions may do so during the "lag time" created when asbestos plaintiffs object to the conditional transfer order (CTO).  Exhibit A, fn. 2

3. In the past, when Hawai`i federal asbestos cases were assigned to Judge Robert E. Jones (sitting by designation), Judge Jones always heard remand motions while jurisdiction remained within the District of Hawai`i.

4. Numerous courts throughout the Ninth Circuit and throughout the country have granted remand motions in asbestos cases in precisely the same procedural posture on precisely the grounds requested in the instant remand motion. These courts have considered and rejected the same evidentiary record that these defendants have supplied herein, finding it insufficient to create federal officer removal jurisdiction. (See infra, pp. 19-26.)

5. The United States Supreme Court has ruled that in all cases, jurisdiction must be determined first. *Ruhrgas A.G. v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("A federal court may not hypothesize subject matter jurisdiction.") ("The requirement that jurisdiction be established as a threshold matter is inflexible and without exception."). Indeed, the Ninth Circuit has also so held. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("At the core of the federal judicial system is the principle that the federal courts are courts of limited jurisdiction. A review of the federal court's jurisdiction is a threshold question which must be answered prior to the disposition of each case before it.")

6.     Roger Nelson is alive, but dying of mesothelioma (*see*, Exhibit B). He is not expected to survive much longer.  If this case is remanded back to State court in August 2011, then this *Nelson* case can be included in the August 2011 state court trial setting conference and can be set for trial in May 2012 in Hawai`i State Court.  (See CMO No. 1 at p. 12, attached hereto as Exhibit C).

7.     In MDL-875, many Plaintiffs wait for one year or longer before a ruling on their remand motions.  (See *Hays* docket sheet #52, Exhibit D hereto where remand motion is still pending in MDL since June 11, 2010.)

8.     Lastly and dispositively, this case is within the Ninth Circuit, so that Ninth Circuit law should apply.  If this case were to be transferred to MDL-875, it would <u>not</u> be transferred for trial on the merits, rather it would <u>only</u> be for pretrial proceedings, and this case would then transferred back to Hawai`i Federal Court in 18-24 months for trial.  At that time, Ninth Circuit law would apply again.  **Thus, it makes sense for jurisdictional rulings to apply Ninth Circuit law at the outset of this litigation.**  As the Ninth Circuit explained in *Snell v. Bell Helicopter*. 107 F.3d 744, 749 (9th Cir. 1997), Defendant "has shown neither that 'the government considered the appropriate warnings, if any, that should accompany the product' nor that it 'approved reasonably precise specifications' constraining Bell's ability to comply with whatever duty it may have had."  *See also Hawaii Federal*, 960 F.2d at 812 (9th Cir. 1992) ("There thus existed no conflict between

their state law duty to provide adequate warnings to end users of their insulation and the conditions imposed on them pursuant to the agreement they had entered into with the government.")

9.     Despite the 4,000 pages of exhibits supporting Defendants' removal petitions, they cite not one rule, regulation, military specification, naval order, or contractual provision that addressed, let alone prohibited, equipment manufacturers warning end users about the dangers of asbestos.   Indeed, not one removing defendant has produced the government contract they allege prohibited them from warning end users about asbestos.

Thus, as numerous federal courts throughout the country and within the Ninth Circuit have held, there is no colorable federal defense and there is no causal connection between Defendant's actions and directions of a federal officer to support federal officer removal jurisdiction on Plaintiffs' failure to warn asbestos claims.  Despite Defendant's deliberately trying to muddy the waters, Ninth Circuit law is clear, and the factual record is devoid of any document supporting the government contract defense as defined by the Supreme Court in *Boyle v. United Technologies*, 487 U.S. 500 (1988).   *See In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992).

## IV.     THE JUDICIAL PANEL IN ASBESTOS MDL-875 EXPRESSLY AUTHORIZED LOCAL FEDERAL COURTS TO HEAR REMAND MOTIONS

Needless to say, this is not the first time a removing defendant has asked a local federal court to defer ruling on a remand motion in the asbestos litigation. However, for decades -- literally, since the beginning of MDL-875 to the present day in 2011 -- the federal courts have held that local federal courts may rule on jurisdictional remand motions pending final transfer to MDL.

The most authoritative statement was by the Judicial Panel itself in 1996. As the Panel explained:

> The plaintiffs . . . have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on motions to remand to state court. . . . We note that:  1) as a practical matter, there is a **lag time** of at least three or four months from the filing of an action, its identification as a potential tag-along action, issuance of a conditional transfer order, stay of transfer, when a party timely objects to the conditional transfer briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order, 2) Panel Rule 18, R.P.J.P.M.L., supra, 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) **accordingly, those courts wishing to address such motions have adequate time in which to do so**. . . .[emphasis added]

*In re Asbestos Product Liability Litigation (No. VI)*, at fn. 2, attached hereto and marked as Exhibit A. (Currently, given the electronic filing system, the lag time is closer to eight to ten weeks than three to four months.)

It has been the practice of the U.S. District Court for Hawai`i to rule on jurisdictional remand motions.  Indeed, when Judge Robert Jones was sitting by

-10-

designation for the Hawai`i Asbestos Federal litigation, he granted hearings on remand motions, as did Hawaii federal judges before him.  (Exhibits E, F & H.)

## A.   **This Court's *Ortiz* Opinion**

This Court has ruled on the propriety of addressing jurisdictional remand motions when there is a pending MDL.  *Ortiz v. Menu Foods, Inc.*, 525 F. Supp. 2d 1220 (D. Hawaii 2007)[*].  See also, *Sylvester v. Menu Foods, Inc.*, 2007 WL 4291024 (D. Hawaii) (Kay, J.).  In *Ortiz*, Judge Ezra adopted the findings and recommendations of Magistrate Judge Kobayashi and granted remand and denied as moot a motion to stay.  As here, defendant argued for stay due to a pending MDL.  This Court cited Rule 1.5 (now 2.1(d)) of the JPML Rules that the pendency of a CTO does not affect the pretrial jurisdiction of this District Court.

> In other words, a district court need not automatically stay a case when there is something pending before the MDL Panel. Rather, the court has the discretion to grant a stay when it is in the interest of judicial economy and efficiency.  [citation omitted]

> When considering a motion to stay, district courts in the Ninth Circuit consider the following factors: (1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party if the action is not stayed, and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact, consolidated.

*Ortiz*, 525 F. Supp. 2d at 1231-1232 (inner quotations omitted).

---

[*] Indeed this court, in another asbestos case, set the remand motion for hearing on May 26, 2000, i.e., 8 weeks after removal filed on March 28, 2000.  This was before Judge Jones was assigned to sit by designation.  (Exhibit G, *Rellin* docket sheet)

## B.      The Relevant Factors Weigh Against A Stay

Here, those three factors are straightforward and compel denial of the stay motion:

1.      There is severe potential prejudice to the non-moving party.  Roger Nelson is alive, but dying of mesothelioma.  (Exhibit B.)  If this case is remanded by August, then the *Nelson* case will be a part of the State Court August pretrial conference and set for a trial date of May 2012.  (Exhibit C.)  Extensive discovery has already been done in the State Court: (1) extensive master interrogatories were answered on May 31, 2011; (2) over 4,000 pages of documents were produced by Plaintiffs; (3) Roger Nelson gave a 7.5 hour video deposition on June 10, 2011. (Declaration of Counsel at ¶ 5).  Indeed, this removal has *de facto* stayed further state court pretrial work up.  So, there is prejudice to all parties and to State court if this case is not expeditiously remanded.

2.      There is no hardship or inequity to the moving Defendants if this Court rules on the remand motion.  These same removing defendants have been named in asbestos litigation in Hawai`i State Court and in mainland state courts for years, if not for decades.  This is mature litigation.  There is no hardship for these defendants to defend this case in Hawai`i state court where other asbestos cases are currently pending against them -- asbestos cases that these same defendants deliberately chose not to remove.

-12-

3.   Judicial resources will be saved by remand to Hawai`i state court. Again, this is mature litigation in the Hawai`i state court.   There is an existing CMO with two trial settings per year.   (Exhibit C, CMO No. 1, p. 12.)   This removal is an obvious attempt by Defendants to avoid this expeditious litigation and to delay the resolution of this case.

Indeed, MDL Judge Robreno told the Plaintiff and Defendant Steering Committees in May 2011 that at some point in the near future, he intends to ask that newly filed and removed cases no longer be transferred to the MDL.   Thus, MDL-875 is in the winding down phase, not the beginning phase.

## C.   The *Ortiz* 3-Step Methodology

This Court further addressed remand motions and motions to stay in the MDL context.   As this Court in *Ortiz* explained:

> In this case, not only is the issue of whether to grant a stay before this court, however, but also the issue of whether to remand the action to state court. **Courts have held that when jurisdictional issues are in dispute, a motion to remand should be resolved prior to the determination of whether a stay is appropriate.** [numerous citations omitted].

*Ortiz*, 525 F. Supp. 2d at 1232 (emphasis added).

This Court then discussed the three step methodology when considering simultaneous remand motions and stay motions.   If the preliminary analysis of the remand motion "suggests that removal was improper," then the court should proceed with the remand motion and remand to state court.   *Ortiz*, 525 F.Supp.2d

at 1232.   As explained exhaustively in Plaintiffs' Remand Motion, numerous courts within the Ninth Circuit and throughout the country have held that the *Boyle* government contract defense is not colorable for claims based on failure to warn end users about the dangers of asbestos, so that there is no federal officer removal jurisdiction.   The Ninth Circuit case law is clear on this: if the Navy never addressed the issue of a manufacturer warning end users about the dangers of asbestos, then the *Boyle* government contract defense does not exist as a matter of law.

The second step in *Ortiz*, is if "the jurisdiction issue appears factually or legally difficult", then the court should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Ortiz*, at 1232.   Of course, this presupposes that the MDL judge will make an omnibus ruling which will apply to the entire MDL litigation.

However, the asbestos litigation is mature litigation.   Different circuits have already established controlling law regarding the *Boyle* government contract defense in the asbestos litigation.   This issue has already been resolved in the Ninth Circuit, Second Circuit, Eleventh Circuit. *Hawaii Federal*, 960 F.2d 806 (9th Cir. 1992); *In re Joint E. & S. District of New York Cases*, 897 F.2d 626 (2d Cir. 1990); *Dorse v. Eagle-Picher Industries*, 898 F.2d 1487 (11th Cir. 1990).   However, the

Third Circuit has never ruled on this *Boyle* defense in the asbestos factual context or even in a failure-to-warn factual context.   As exhaustively explained in Plaintiffs' Remand motion, numerous courts throughout the Ninth Circuit and throughout the country have granted remand motions on this exact record.

Thus, there is no reason to defer to the MDL court even if this Court believes that the issues are legally or factually difficult.   Defendant Air Liquid (fka Buffalo Pumps) candidly admits that "numerous federal courts have already addressed this exact jurisdictional issue. (Air Liquid's motion to stay at pp. 12-13.) The entire premise for deferring to the MDL court is to achieve judicial uniformity. Here, however, there is over 10 years of non-uniformity.

Moreover, if Ninth Circuit law is applied, then remand is not a legally difficult issue.   Under Ninth Circuit law, there is nothing factually or legally difficult in determining the instant remand motion, given the complete absence of any supporting documents upon which Defendants can base their purported federal officer removal, i.e. no document to show a "conflict" between Navy policy and warning end users.

Ninth Circuit law is simple and straightforward.   The *Boyle* government contractor defense is not available in an asbestos failure-to-warn claim, where there is no evidence that the Navy prohibited or prevented a manufacturer from warning about asbestos as required by state law.

-15-

*In re Hawaii Federal Asbestos Cases* involved claims of asbestos cancer by "Plaintiff Sawyer's decedent [who] was a sailor aboard the cruiser Topeka and other warships."  960 F.2d at 809.  The other plaintiffs "worked in various naval shipyards, including Pearl Harbor."  *Id.*  As the Ninth Circuit explained:

> Such displacement of ordinary tort liability "occurs only where a significant conflict exists between an identifiable federal policy or interest and the operation of state law"

960 F.2d at 810, quoting *Boyle v. United Technologies* 487 U.S. 500, 507 (inner quotes, ellipses and brackets omitted).

The Ninth Circuit further explained that:

> They could have provided detailed and prominent statements regarding the dangers of asbestos insulation without violating the terms of their procurement contracts or their product specifications. **There thus existed no conflict between their state law duty to provide adequate warnings to the users of their insulation and the conditions imposed on them pursuant to the agreements they had entered into with the Government**.

> As a result, a crucial element of the military contractor defense as defined in *Boyle* is missing. Owens-Illinois and Fibreboard have simply failed to allege, let alone establish, that in making their decisions regarding warnings they were acting in compliance with "reasonably precise specifications" imposed on them by the United States.  [Citation to *Boyle* omitted.]  As the Second Circuit recently noted . . ., "[s]**tripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'** *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion."  Here, the Government did not require Fibreboard or Owens-Illinois to do

-16-

anything with respect to the placement of warnings on their products. Nothing in *Boyle* suggests preemption of a state law duty to warn under such circumstances.

960 F. 2d at 812-813.  (emphasis added)

Indeed, the appellants in *Hawaii Federal*, like Air Liquid/Buffalo and Crane Co. herein (*see* Remand Exhibits 34-38), eventually did put asbestos warnings on their products.  The Ninth Circuit noted:

After 1966, the appellants did place a warning label on their insulation which advised of the danger of breathing asbestos dust. . . . Thus, even were asbestos insulation "military equipment," we would affirm the district court's decision to preclude the military contractor defense.

960 F.2d at 813-814.

There is nothing factually difficult to determine when not one removing defendant has offered any actual navy contract by which they supplied equipment for use upon Roger Nelson's two Navy ships.  When it comes to their failure to warn about asbestos, Defendants have no actual evidence to show that "the government made me do it".

The third *Ortiz* step is to consider the merits of a motion to stay under the three factors cited above: (1) prejudice to plaintiff; (2) hardship to defendant; and (3) judicial resources.  In *Ortiz*, this Court found that the jurisdictional issues were complicated, yet under the balancing test, judicial economy would not be served to grant a stay.  *Ortiz* at 1233.  Indeed, the *Ortiz* court held as follows:

First, **issues of jurisdiction should be decided as early in the process as possible**. . . . Even if a number of the cases pending

-17-

transfer raised . . . jurisdictional issues, judicial economy would not be served by having the transferee court rule on remand because this action is based entirely on Hawai`i state law. . . . Last, the parties have already fully briefed a remand motion and it would not serve any of the parties' interest to delay the adjudication of the remand issue. **Because this case should only be transferred if subject matter jurisdiction is proper**, the court finds it appropriate and necessary to first address the remand motion.

*Ortiz*, 525 F. Supp. 2d at 1233 (emphasis added).

Judicial economy would not be served by having the MDL court hear the remand motion.  Currently, there are remand motions filed and still pending in MDL-875 for over one year.  (See *Hays* docket sheet #52, remand motion filed June 11, 2010, Exhibit D hereto.)  As Air Liquid/Buffalo admits "numerous federal courts have ruled on this issue (Air Liquid's motion to stay at pp. 12-13); and indeed, continue to rule upon this issue.  (See *Glein v. Boeing Co.*, 2011 WL 537987 (S.D.Ill.); *Baker v. Air & Liquid Systems*, 2011 WL 499963 (S.D.Ill.) for 2011 orders  finding the *Boyle* defense not colorable and remanding to state court in failure to warn claims.)  Indeed, efficiency is achieved by having local federal courts rule on remand motions.  Even after a case has gone through the MDL process and been transferred back for trial, federal courts give no credence to the *Boyle* defense in failure to warn claims.  *See* Exhibit H, transcript at p. 577-78, January 13, 2011 in *Curry v. American Standards*, (S.D.N.Y.) ("I think just as a matter of policy it makes no sense.  The government contractor defense makes sense where the government for its own purposes has gone through, made a

consideration basically in the contracting[,] has specifically set that out it does not want a particular design or a particular warning [--] but it's not intended to be a complete shield. . . . The record here is that there was no limitations that a contractor or a supplier warning was, specifically limited by the Navy . . .").

In *Holdren v. Buffalo Pumps*, 614 F. Supp. 2d 129 (D. Mass. 2009), the court held after reviewing numerous affidavits and regulations (i.e., the same evidence, with Forman, Horne, Sargent et al affidavits) that the *Boyle* defense was **not** colorable as a matter of law to equipment manufacturers in an asbestos failure to warn claim. The claim was brought on behalf of a boiler technician who worked on board various U.S. Navy ships and Navy shipyards from 1957 to 1979. The defendants "produced machinery for Navy ships". *Id.* at 135 and 137-138. The court concluded that the government contract defense was not available as a matter of law and held as follows:

> The defendants have shown that they were subject to many military specifications and regulations to the products at issue, **but quantity is no substitute for precision in the *Boyle* analysis**. They have offered **no Navy regulations or specifications that apply to asbestos warnings in particular** and few, if any, that relate to their ability to include safety warnings more generally. In fact, the specifications governing the creation of technical manuals appear **to open the door to warnings developed for products sold commercially**. This evidence does not meet the requirement of "reasonably precise specifications" in the failure-to-warn context -- specifications which must show a significant conflict between federal interest and state-law duties. **Nor does it demonstrate that the Navy itself "caused" the defendants to omit the disputed warnings**, as the federal officer removal statute requires.  [emphasis added]

*Id.* at 151. *Holdren* is directly on point and refutes all of Defendants' contentions.

Other recent cases explaining there is no evidence supporting the *Boyle* defense include:

1. *Lindenmayer v. Allied Packing & Supply*, 2010 WL 234906 (N.D. Cal.) (Henderson, J.) at *6 ("The federal government cannot have exercised its discretion to preclude Foster Wheeler from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place. Foster Wheeler's defense to the failure-to-warn claims is therefore not 'colorable'.");

2. *Moore v. Asbestos Defendants*, 2010 WL 2650487 (N.D. Cal) (Seeborg, J.) at *4 ("Metalclad offers no evidence of any particular Navy specification that would have been in conflict with its duties to warn under state law.");

3. *Luce v. A.W. Chesterton*, 2010 WL 2991671 (N.D. Cal. 2010) (Chesney, J.) at *2 ("Rockwell does not . . . offer evidence to show that it proposed any type of warning to the Navy, much less that the Navy considered and rejected a warning. Rather, Rockwell's showing of a conflict . . . is based on a hypothetical set of facts, essentially, Rockwell's assumption that if Rockwell had proposed a warning, the Navy *would have* rejected it.");

4.    *Prewett v. Goulds*, 2009 WL 2959877 (W.D. Wash. 2009) (Martinez, J) at *7 ("Foster Wheeler has provided no evidence that it ever attempted to warn, or that the Navy prohibited warnings. Instead, the affidavits merely show that the Navy 'would not have allowed its equipment suppliers . . . to affix any warnings related to any asbestos hazards on their equipment.' Statements to this effect are merely hypothetical in the absence of evidence that Foster Wheeler attempted to warn. . . . Because Foster Wheeler did not suggest warnings to the government, it is impossible that the 'design feature in question'; in this case the warnings, was considered by a government officer, and not merely the contractor itself. *Boyle*, 487 U.S. at 512. Thus, Foster Wheeler's government contractor defense is not 'colorable'.");

5.    *Barrett v. CLA-VAL Co.*, Slip Opinion, CV07-7774 PSG (C.D. Cal. 2008) (Gutierrez, J.) at *5 ("None of the declarations or affidavits cite to any specific military or contractual provisions demonstrating the Navy actually discussed the issue of asbestos warnings on the equipment.  Absent such a showing, Foster Wheeler has no colorable military contractor defense to a failure to warn claim.");

6.    *Scarbrough v. General Electric Co.*, Slip Opinion, CV 07-1192-RGK (C.D. Cal. April 13, 2007) (Klausner, J.) at *2 ("Defendant has submitted numerous exhibits, declarations, and specifications from the United States Navy

demonstrating that the Navy exercised control over the design and manufacturing of Defendant's machines.   However, Defendant has not shown that the Navy required it to refrain from using warnings nor has it shown that the Navy provided reasonably precise specifications affecting Defendant's provision of warnings. Since Defendant cannot show that the Navy instructed it not to warn, Defendant fails to raise a colorable federal defense.");

7.   *Westmiller v. IMO Industries, Inc.,* 2005 WL 2850334 (W.D. Wash.) (Martinez, J.) at *2 ("Thus, in this [9th] Circuit, the government contractor defense applies to displace state tort law only 'when the government , making a discretionary, safety-related military procurement decision contrary to . . . state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion'.") & at *3 ("While it is true that *Mesa* requires only a "colorable" federal defense, Viad has not produced any evidence that would meet even that minimum standard." [rejecting affidavit of Adm. Lehman]);

8.   *Schilz v. A.P. Green Industries, Inc.*, 2002 U.S. Dist. Lexis 1176 (N.D. Cal.) (Chesney, J.) *4 ("USS has failed to submit evidence demonstrating that it was subject to any government specifications with respect to the placement of warnings on its products.   Absent such a showing, defendant may not rely on the

government contractor's defense.  As defendant has failed to raise a colorable federal defense to plaintiff's claims.  Removal is not proper . . .");

9.     *Nguyen v. Allied-Signal*, 1998 WL 690854 (N.D. Cal.) ("The Ninth Circuit's decision in *Hawai`i Federal* controls here.  As defendants have made no showing that their contractual obligations . . . specifically prohibited them from placing warnings on their products, they cannot raise the government contractor defense in this failure to warn case. . . . Although defendants include evidence regarding control of the federal government over the manufacture of its products, this evidence does not demonstrate that the federal government directed defendants not to place warnings on their products.  Therefore, there is no causal connection. . . .");

10.    *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal.) (Illston, J.) at *4 ("Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contactor immunity.");

11.    *Craigg v. Alpha Laval*, 2009 WL 4110389 (S.D. Ill.);

12.    *McCormick v. C.E. Thurston & Sons*, 977 F. Supp. 400 (E.D. Va. 1997);

13.    *Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. Lexis 4433 (D. Del.) ("the respective courts [9th and 2d Circuits] found that the government in no

way had prohibited the contractors from placing warnings on their asbestos-containing products. . . . Likewise, there is no evidence of records that the U.S. Navy prohibited defendants from, or otherwise directed defendant in, issuing warnings or researching and effecting product safety.  Under these circumstances, the court concludes there is no casual connection. . . ; thus, there is no colorable federal defense.");

14.   *Snowdon v. A.W. Chesteron*, 366 F. Supp. 2d 159 (D. Me. 2005);

15.   *Green v. A.W. Chesterton Company*, 366 F. Supp. 2d 149 (D. Me. 2005);

16.   *Williams v. General Electric Company*, 418 F. Supp. 2d 610 (M.D. Pa. 2005);

17.   *Epperson v. Northrop Grumman Systems Corp.,* 2006 U.S. Dist. Lexis 3033 (E.D.VA.) at *15 ("Likewise, if a naval contract mandates the use of asbestos insulation on a military vessel, yet provides no requirements as to the installation procedure or warnings to be provided to civilians installing the asbestos, the contractor could comply with everything 'promised to the government' while at the same time following the 'states prescribed duty of care' to both warn employees and to create procedures to avoid potentially fatal exposure to asbestos dust.");

18.   *Hilbert v. Aeroquip, Inc.,* 486 F. Supp. 2d 135 (D. Mass. 2007);

19.   *Sether v. AGCO Corporation*, 2008 WL 1701172 (S.D. Ill.);

-24-

20.    *Hampton v. Owens-Illinois,* 2007 WL, 274794 (E.D. La.) at *2 ("On the specific issue of warnings and safety procedures, defendant has not identified any evidence that Delta was barred from instituting enhanced safety and warning procedures regarding asbestos.");

21.    *Weese v. Union Carbide Corp.,* 2007 WL 2908014 (S.D. Ill.) at *6 ("A defendant must show that the government prevented it from issuing adequate warnings regarding exposure to asbestos");

22.    *Granier v. Northrop Grumman Ship Systems*, 2008 WL 5216213 (E.D. La.) (Fallon, J.);

23.    *Miranda v. Abex Corp.,* 2008 WL 4778886 (S.D.N.Y.) at *3 ("As GE has not demonstrated that the government prevented it from including warnings on the aircraft components it manufactured, it has failed to establish a colorable federal defense.") and ("GE fails to rebut the obvious inference that it never tried to warn about asbestos at all".).

24.    *Glein v. Boeing*, 2010 WL 2608284 (S.D. Ill.) at *3 ("It is clear that the USN [Navy] expected equipment manufacturers like UTC to furnish the warning that accompanied the products that they produced for the [Navy] and that such warnings would comply with state law.");

25.    *Cardaro v. Aerojet General Corp*., 2010 WL 3488207 (E.D. La) at *6 ("Crane has not shown that the Navy required it to refrain from issuing warnings

about the dangers of asbestos...or that any control the Navy may have had over warnings directly interfered with Crane's ability to fulfill its state-of-law obligation to warn...");

26.   *Mouton v. Flexitallic*, 1999 WL 225438 (E.D. La 1999) (Porteous, J) at *2 ("Although Avondale arguably 'acted under' the Navy's direction when working by detailed instructions to build the destroyers . . . the specifications under the contract . . . only had more general references to safety regulations.   The federal government provided no direction on warnings when using asbestos and further did not prevent Avondale from taking its own safety precautions above the minimum standards . . . in the federal contracts.   Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction . . . and Plaintiff's failure to warn claims.").

## V.   ALL OF DEFENDANTS' ARGUMENTS LACK MERIT.

Defendants actually accuse Plaintiffs of forum shopping.  (Buffalo's memo at 8 ("Plaintiffs' efforts to . . . remand . . . appears to have more to do with forum preference than with the pace at which the lawsuit will proceed.").) (Warren & IMO's memos at 21) (Crane Memo at 8).  This is a blatant distortion of facts.  In State Court, Plaintiffs would have this case set for trial no later than May 2012.  By removing to Federal Court, Defendant seeks the obvious tactic of delaying a State Court trial date, since MDL-875 is only for pretrial, not trial.   After running

through the 18 to 24 month (or longer) MDL procedure, this case would then be sent back for trial in Hawaii Federal Court if this case is allowed to be transferred to the MDL.

Furthermore, Plaintiffs dispute any that idea that there are any efficiencies in the asbestos MDL. Many remand motions take over one year to be ruled upon in MDL-875. This is proven by the very cases Defendant cites.

In *Hagen v. Benjamin Foster, Co.*, 739 F. Supp 2d 770 (E.D. Pa. 2010), the case was removed to MDL-875 on October 12, 2006. The remand motion was filed 7 **days** later, on October 19, 2006. Yet no ruling was made until September 24, 2010 - almost **4 years** later! *Hagen*, 739 F. Supp. 2d at 773. In *Bonds v. Various Defendants*, 2011 WL 921647 (E.D. Pa. 2011), the asbestos case was removed to Federal Court on February 24, 2010 and transferred to MDL-875 on May 4, 2010. The plaintiff moved to remand on timeliness (which had to be filed within 30 days of removal)[1], yet no ruling was made on the remand motion until March 15, 2011. This was nearly a 1-year delay.

Indeed, some cases have gone through MDL-875 and been transferred back with the pending remand motion never ruled upon! *Cardaro v. Aerojet Corp.*, 2010 WL 3488207 (E.D.La.). In *Cardaro*, Plaintiffs filed their remand motion on

---

[1] 28 U.S.C. § 1447 (c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after . . . notice of removal . . .")

July 25, 2005, claiming no federal officer removal jurisdiction.   The case proceeded through MDL, and was transferred back with no disposition on the remand, a five-year delay.  As the *Cardaro* court explained:

> Plaintiffs' motion is styled 'Plaintiffs' Emergency Motion for Remand. . .' and it was timely filed on July 25, 2005. (Doc. No. 35.) Disposition of this motion has been unfortunately delayed for an inordinate amount of time due at least in part to the procedural quagmire of this case through the MDL court and transfer back to this Court.

*Cardaro*, at *fn.1.

Thus, after a five-year diversion to MDL, the case was finally remanded back to state court when District Judge McNamara found no federal officer removal jurisdiction.

> Crane has not shown that the Navy required it to refrain from using warnings about the dangers of asbestos . . . or that any control the Navy may have had over warnings directly interfered with Crane's ability to fulfill its state-law obligation to warn of hazards associated with asbestos.

*Cardaro*, at *6.

Defendant is right.  There are identical remand motions currently pending in MDL-875, many of which have been pending there for over a year.  In the *Hays* case, the remand motion was filed on June 10, 2010.  It is now 13 months later, and as the court can see from the *Hays* docket sheet, there is yet to be a ruling on the remand motion.  (Exhibit D, Doc# 52).

## VI.   DEFENDANTS ARE MERELY ENGAGING IN DELIBERATE DELAY TACTICS.

If this case had not been removed, this case would have been set for trial in Hawai`i State Court no later than May 2012.  The sole motive for Defendants to wrongfully remove this case was to delay this mature, efficient state court asbestos litigation.  Their protestations of prejudice are false.  The "game" that Defendants play by removing cases to federal court in the face of an MDL proceeding has been recognized by many district courts throughout the country.

As the District of Massachusetts explained:

> This court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court. Where, as here, the motion to remand does not implicate issues that are within the exclusive jurisdiction of the MDL court the motion to remand can be resolved without encroaching on the exclusive territory of the MDL court. [citation omitted]  Under such circumstances, a stay is not warranted. [citation omitted]
>
> . . .
>
> Finally, this court finds no reason to require the Plaintiffs to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction.  To undergo such a lengthy process to find out that there is no federal jurisdiction would be a travesty of justice given Mr. Hilbert's medical condition.  For all these reasons, this court recommends that the motion to stay be denied and the motion to remand be addressed.

*Hilbert v. Aeroquip*, 486 F.Supp.2d 135, 142 (D.Mass. 2007) (Motion to Remand granted, finding the *Boyle* government contract defense not colorable and thus, no federal officer removal jurisdiction) Again, as Air Liquid admits, "Numerous

-29-

federal courts" have ruled on this exact issue. (Air Liquid Motion to Stay at 12-13)

As Plaintiffs contend, Ninth Circuit law should apply in the Ninth Circuit.

In *Rosamond v. Garlock Sealing Technologies*, 2004 WL 1059811

(N.D.Miss.) District Judge Mills explained that defendants were engaging in

"litigation tactics" by removing cases for any reason with the hope for a transfer to

MDL-875. As the *Rosamond* court explained:

> Any disapproval with which this court expressed regarding the litigation tactics in many asbestos removals lies in the fact that the court has repeatedly observed that defendants will attempt to delay any consideration of the merits of removal until a transfer of the case to an MDL court. . . . A review of the defendants' filings in this case reveal, beyond question, that their primary strategy in this and several companion cases . . . was to postpone any ruling on the motion to remand until after the case had been transferred to an MDL court.

*Rosamond*, 2004 WL 1059811 at *5.

The *Rosamond* court explained that it recognized this as a "game" that

removing defendants play:

> To reiterate, it is understandable that defendants should wish to secure transfer to an MDL court, and the court harbors absolutely no ill will towards defendants or their counsel for attempting to do so. At the same time, this court has a responsibility to ensure that all parties before it are treated fairly, and the court would not be serving the interests of justice by simply ignoring the "game" which is quite obviously being played in many, if not most, of the asbestos removals which come before it.

*Id*. at *6.

Even federal district courts within the state of Pennsylvania (1) acknowledge the delays that MDL-875 entail and (2) rule on remand motions while they still retain jurisdiction.   *Lichtenfels v. Electro-Motive Diesel*, 2010 WL 653859 (W.D.Pa.).  As the *Lichtenfels* court explained:

> In the present case, no evidence has been provided contesting Plaintiff's assertion that its state court proceedings against other defendants are proceeding according to schedule, and nothing indicates that this matter would proceed in any manner other than expeditiously in state court.  As plaintiffs point out, if their asbestos exposure-related case were removed to federal court, it would likely be transferred to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875 under the Judicial Panel on Multidistrict Litigation where it would likely proceed much more slowly than in the state court in which proceedings are already being conducted.

*Lichtenfels*, 2010 WL 653859 at *8.

U.S. District Judge Alsup of the Northern District of California was more blunt:  "The federal officer defense is simply being used as a delay tactic." *Brewster v. A.W. Chesterton*, 2007 WL 1056774 (N.D.Cal.) at *1.   As to efficiencies, Judge Alsup stated: "Remand to the state court ready to try Plaintiff's case within the month serves the interests of justice."   *Id*. at *3.  In footnote 2, Judge Alsup noted:

> For one perspective on this and similar tactics by asbestos-defense lawyers, see Fair Play for Navy Veterans at http://www.mesothel.com/legislation/navy_vets_fair_play.htm ("Navy vets who pursue civil claims are confronted by loopholes in the law that allow shrewd asbestos defense lawyers to either harmfully delay

the prosecution of a claim (called 'federal officer' removal to federal court) or delay the claim altogether (called the 'MDL Black Hole').").

Other district judges have pointed out this removal "game" is not merely found in MDL-875 (which involves a mature asbestos litigation that has been ongoing for three to four decades in state courts) but is generic to the MDL practice.  *Delaventura v. Columbia Acorn Trust*, 417 F.Supp.2d 147 (D.Mass. 2006).  As Judge Young explained:

> It is the province of the competent attorney to shop for a forum believed best suited to the client's cause. It is the province of the federal judiciary fairly to mediate between the aspiration and the reality.

*Delaventura*, 417 F.Supp.2d at 147-148.  Judge Young explained that:

> MDL is said only to "concentrate" or "centralize" cases for pretrial proceedings rather than permanently consolidate them.

*Id*. at 148 n.2 (citations omitted and inner quotes and brackets deleted).

Judge Young explained how it has been noted by judicial commentators that the MDLs are used as delaying tactics by defendants:

> MDL proceedings are described as "delaying tactic used by defendants" which "consume a great deal of time." [citations omitted] Plaintiffs lose control over the management of their case. [citation omitted]  This "strategy allows the defense counsel to attempt to secure a transfer order or conditional transfer order before the original federal district court determines, and in some cases, even hears, the anticipated motion to remand." [citation omitted]

*Delaventura*, 417 F.Supp.2d at 155-156.

Accordingly, Defendants' protestations of unfair prejudice to themselves should be recognized for what they are.  This removal is merely a tactic being employed to delay expeditious resolution of the Nelsons' claims in state court. The only prejudice to Defendants if the remand motion is heard is that they may be unable to achieve the fruits of their delaying tactics.

Defendants request a stay for "uniformity" in remand rulings.  As this Court can see, there is no uniformity.  As explained in Plaintiffs' Remand Motion, district courts have split on the standard for §1442 removal: (1) Are mere allegations enough as in *Hagen*, where a Rule 12(b)(6) motion to dismiss standard is applied, in that all allegations are accepted as true and pleadings are not pierced? Or (2) does "colorable defense" mean what the Supreme Court and Ninth Circuit held -- not mere allegations, but some substantial evidence.

Also, the district courts split on the meaning of the *Mesa* element "causal nexus."  Does this mean what the Supreme Court held: that "there must be a causal connection between what the officer has done under asserted official authority and the state prosecution." *Mesa*, 489 U.S. at 131.  See *Holdren*, 614 F.Supp.2d at 142 ("the federal government must be the source of the specific act for which the contractor now faces suit.") & at 150 ("If the manufacturers never contemplated warning about asbestos here and did not do so on their other products, it is difficult to know how the Navy 'caused' them to omit such precautions. . . . This [causal

nexus] element will be hard to satisfy.  It simply prevents moving defendants from imputing their own unrelated judgments to the government after the fact.  Here, however, that appears to be precisely the manufacturers' rationale.").  Or, is mere federal contractor status enough to automatically establish a causal nexus for anything done under the contract whether dictated by the contract or not?

Defendants cite *In Re Asbestos Products Liability Litigation* (VI): *Wooly/Baden*, 170 F.Supp.2d 1348 (J.P.M.L. 2001).  (Warren & IMO's memos at 5 & 17) But again, the Judicial Panel in this very opinion reaffirmed that when conditional transfer orders are pending in MDL-875, there is a "lag-time" of three or four months "to accommodate" "the resolution of pending motions to remand." 170 F.Supp.2d at 1349 n.1. This is exactly what is happening here.

Finally, Crane, Warren and IMO cite the original order creating MDL-875 for the proposition that "the heyday of individual adjudication of asbestos mass tort lawsuits has long passed."  Crane Memo at 7; Warren & IMO's memos at p. 20, citing *In Re Asbestos Products Liability Litigation (VI)*, 771 F.Supp. 415, 419 (J.P.M.L. 1991).  First, the Judicial Panel was quoting the observations of another judge.  More importantly, that observation was 20 years ago.  In their next breath, Defendants then state that MDL transfer will not long delay Nelson's "day in court."  (Crane Memo at 8) (Warren & IMO's motions at p. 21.)

-34-

The fact is that the last asbestos trial to verdict in Hawai`i State court was in 1993.  (Declaration of Counsel at ¶3.)  All asbestos cases for the last 18 years have settled prior to verdict and 99% prior to jury selection. (Declaration of Counsel at ¶4.)  It is this efficient, streamlined Hawai`i State Court asbestos procedures that removing defendants do not like and wish to disrupt with delays.  These are the inefficiencies that Defendants seek by this removal of the claims of a man dying of mesothelioma.

## VII.    CONCLUSION.

This Honorable Court should deny Defendants' Motion to Stay.

DATED: Honolulu, Hawai`i, August 8, 2011.


/s/L. Richard DeRobertis
GARY O. GALIHER
L. RICHARD DeROBERTIS
DIANE T. ONO
SCOTT K. SAIKI
ILANA K. WAXMAN
TODD W. EDDINS
MICHAEL A. RAGSDALE
Attorneys for Plaintiffs